UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| A.A. and K.A., by and through next friend TAMONIQUE GRADY, <br><br>  Plaintiffs, <br><br> vs. <br><br> CITY OF FLORISSANT, et al., <br><br>  Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 4:15-CV-523 (CEJ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM AND ORDER**

This matter is before the court on the motion of defendants St. Louis County, Tom Lasater, Joe Percich, Patrick Hokamp and Chris Most to dismiss the complaint for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiffs have filed a response in opposition and the issues are fully briefed.

**I.  Background**

Plaintiffs are the minor children of Abayomi Afolabi,[1] who died on October 20, 2013, from gunshot wounds he suffered while sitting in his car in front of his home in St. Louis County. Plaintiffs allege that Florissant police officers Andrew Gerwitz and Joshua Smith fired their weapons at Mr. Afolabi. Plaintiffs further allege that Mr. Afolabi's residence was unlawfully searched by St. Louis County detectives Tom Lasater, Joe Percich, Patrick Hokamp and Chris Most. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, asserting claims of excessive force, unreasonable

---

[1] In the complaint, the plaintiffs' father is identified as "Afolabi Abayomi." The probate action filed in the St. Louis County Probate Court is in the name of "Abayomi Alan Afolabi, a/k/a Abayomi Afolabi." The court adopts the name as used in the probate action. On August 21, 2015, the Saint Louis County Probate Court entered a judgment determining that the minor children are Mr. Afolabi's heirs. See Judgment Determining Heirs [Doc. #32-2].

search and seizure, and conspiracy. Plaintiffs also assert Missouri state law claims of wrongful death, assault, and battery.

The plaintiffs' § 1983 claims against St. Louis County are set forth in Counts V and VII. The claims are based on the theories of municipal liability and *respondeat superior*

II. **Legal Standard**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Fed.R.Civ.P. 12(b)(6). The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (stating that a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Scheuer, 416 U.S. at 236. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see id. at 563 (stating that the "no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), "has earned its retirement"); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–84 (2009) (holding that the pleading standard set forth in Twombly applies to all civil actions). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

### III. Discussion

To survive a motion to dismiss, "a civil rights complaint must contain facts which state a claim as a matter of law and must not be conclusory." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995). A plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims, rather than facts that are merely consistent with such a right. Gregory v. Dillard's, Inc., 565 F.3d 464, 473 (8th Cir. 2009) (internal quotation and citations omitted). While a plaintiff need not set forth "detailed factual allegations," or "specific facts" that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. Id. (citations omitted).

#### A. Count V: Policy, Custom, and Failure to Train

Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an "official municipal policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. Atkinson v. City of Mountain View, Mo., 709 F.3d 1201, 1214 (8th Cir. 2013) (citing Monell, 436 U.S. at 690-91 and City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)). Plaintiffs assert that defendant St. Louis County is liable for the actions of defendant police officers Lasater, Percich, Hokamp, and Most because the county: (1) delegated policy-making authority to the officers; (2) had a policy or custom of failing to act on a pattern of transgressions; and (3) failed to properly hire, train, supervise, control and/or discipline the officers.

##### 1. Delegation of policy-making authority

Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. Pembaur

3

v. City of Cincinnati, 475 U.S. 469, 481 (1986). "[T]he authority to make municipal policy is necessarily the authority to make final policy." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority. Pembaur, 475 U.S. at 483.

Plaintiffs allege that the policy makers for St. Louis County are "an aldermanic board, the mayor, or someone else and that person delegated full authority and/or empowered" defendants Lasater, Percich, Hokamp, and Most to make policy. Complaint, ¶¶144, 146 [Doc. #1]. They further allege that St. Louis County's delegation of authority placed the defendant officers in "policy-making positions," with the result that the county is liable for unconstitutional acts of the officers. Id. at ¶¶145, 147.

Defendants argue that plaintiffs' conclusory allegations and formulaic recitation of the elements of their claims are not sufficient to state a claim for relief. Plaintiffs counter that the Supreme Court has rejected any heightened pleading requirement for claims against a governmental entity. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993). More recently, however, the Supreme Court has held that in order to survive a motion to dismiss, a complaint must allege facts sufficient "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Considering this pleading standard, in order to state a viable § 1983 claim against Florissant, plaintiffs are required to plead facts sufficient to support "at least an inference that their constitutional rights were violated as a result of action taken as a result of a delegation of authority." A.J. ex rel. Dixon v. Tanksley, No. 4:13-CV-1514 CAS,

4

2014 WL 1648790, at *7 (E.D. Mo. Apr. 24, 2014) (citations omitted). Plaintiffs plead no facts at all and thus have failed to meet this standard.

## 2. Pattern of transgressions

Plaintiffs alternatively allege that St. Louis County is liable because there was a pattern of transgressions of which it should have known.

"Governmental liability may be established through proof that the alleged misconduct was so pervasive among the non-policy making employees of the [entity] as to constitute a 'custom or usage' with the force of law." Id. (quoting McGautha v. Jackson Cnty., Mo., Collections Dep't, 36 F.3d 53, 56 (8th Cir. 1994)). "[A] custom can be shown only by adducing evidence of a continuing, widespread, persistent pattern of unconstitutional misconduct." Id. (quoting Jenkins v. County of Hennepin, Minn., 557 F.3d 628, 634 (8th Cir. 2009)). Here, plaintiffs allege that the actions of the defendant police officers "were part of a pattern of transgressions, of which [the county] knew or should have known." Complaint, ¶¶202-203. St. Louis County's failure "to act proactively to prevent such a pattern of transgressions, and particularly to prevent the constitutional violations outlined herein," establishes a policy "to condone or otherwise tolerate such constitutional violations." Id. at ¶204. Plaintiffs allege that St. Louis County "thus had a 'policy or custom' of failing to act upon prior similar complaints of unconstitutional conduct, of which they knew or should have known, which caused the constitutional injuries at issue. There was a prior pattern of unconstitutional conduct so 'persistent and widespread' as to have the effect and force of law." Id. at ¶206.

Plaintiffs have not alleged any facts to support this theory of liability. They have not identified any other transgressions that have occurred, nor do they state

5

how St. Louis County addressed or failed to address any other transgressions. In the absence of any factual allegations to support the existence of an unconstitutional policy or custom, there is no basis upon which to hold St. Louis County liable under § 1983. Id. at *9. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. Here, plaintiffs merely recite the elements of a § 1983 claim against St. Louis County with no factual basis for holding it liable. See also A.J, 2014 WL 1648790, at *9 (dismissing identically worded claims against St. Louis Board of Police Commissioners).

### 3. **Failure to train**

Plaintiffs also allege that St. Louis County is liable because it failed to properly hire, train, supervise, control or discipline Lasater, Percich, Hokamp and Most.

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 131 S Ct. 1350, 1359 (2011) (citation omitted). In order to state a claim under § 1983, a municipality's "failure to train its employees in a relevant respect must amount to 'deliberate indifference to the

6

rights of persons with whom the [untrained employees] come into contact.' Only then 'can such a shortcoming be properly thought of as a . . . policy or custom that is actionable under § 1983.'" Id. at 1359-60 (quoting City of Canton, 489 U.S. at 388). Therefore, "when . . . policymakers are on actual or constructive notice that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights, the [municipality] may be deemed deliberately indifferent if the policymakers choose to retain that program." Id. at 1360. The municipality's "policy of inaction" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the [municipality] itself to violate the Constitution." Id.

Here, plaintiffs allege that St. Louis County was "deliberately indifferent to the rights of others in adopting its hiring and training practices, and in failing to supervise, control and/or discipline" the defendant police officers, "such that those failures reflected a deliberate or conscious choice" and "the need to correct deficiencies is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." Complaint, ¶¶188-191. As with their other theories of municipal liability, plaintiffs make only conclusory recitations of the elements of a claim based on failure to train, supervise, control or discipline the individual defendants. The complaint is devoid of any facts relating to this theory of liability which, if proven, would support the claim against St. Louis County. Count V will therefore be dismissed.

B.   Count VII: *Respondeat Superior*

In Count VII, plaintiffs seek to hold defendant St. Louis County liable for the alleged constitutional violations based on the theory of *respondeat superior*. Although the Supreme Court has "held that a municipality is a 'person' that can be liable under § 1983," it is well established "that a municipality cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." Szabla v. City of Brooklyn Park, Minn., 486 F.3d 385, 389 (8th Cir. 2007) (citing Monell v. Department of Social Services of New York, 436 U.S. 658, 690-91 (1978)). Plaintiffs acknowledge that their *respondeat superior* claim against St. Louis County cannot be sustained and, therefore, Count VII will be dismissed.

### C. § 1983 Claims against Individual County Defendants

Plaintiffs allege that, after Mr. Afolabi died, the individual St. Louis County defendants conducted a warrantless search of his home and seized a gun case and bullets in order to protect defendants Gerwitz and Smith by making it appear that Mr. Afolabi had shot himself. In Count II, they assert that the defendants violated Mr. Afolabi's Fourth Amendment rights and, in Count III, they allege that the defendants conspired to violate his Fourth Amendment rights.

To the extent that plaintiffs assert the claims in Counts II and III as heirs or next of kin, they cannot succeed. "[C]onstitutional rights of privacy are personal and cannot be asserted by a deceased person's next of kin." Estate of Conner by Conner v. Ambrose, 990 F. Supp. 606, 614 (N.D. Ind. 1997); see also Rakas v. Illinois, 439 U.S. 128, 133-134 (1978) (constitutional privacy rights are personal and cannot be vicariously asserted). Furthermore, as a matter of law, plaintiffs cannot proceed on claims based on any search conducted in violation of the Fourth Amendment that occurred <u>after</u> Mr. Afolabi's death. Guyton v. Phillips, 606 F.2d

248, 250 (9th Cir. 1979) ("We find that the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985, does not provide a cause of action on behalf of a deceased based upon alleged violation of the deceased's civil rights which occurred after his death. A 'deceased' is not a 'person' for the purposes of 42 U.S.C. §§ 1983 and 1985, nor for the constitutional rights which the Civil Rights Act serves to protect."); Keller v. Finks, No. 13-03117, 2014 WL 1283211, at *6 (C.D. Ill. Mar. 31, 2014) ("[A] deceased person has no rights within our constitutional scheme."); Martin v. Unknown U.S. Marshals, 965 F. Supp. 2d 502, 543 (D.N.J. 2013) ("a person's constitutional rights cannot be violated after death"); Estate of Connor, 990 F. Supp. at 614. Finally, the failure of plaintiffs' claim that the defendants violated Mr. Afolabi's Fourth Amendment rights necessarily invalidates their claim that defendants conspired to commit the violation. See White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008) (plaintiff must prove a deprivation of a constitutional right or privilege in order to prevail on § 1983 civil conspiracy claim). Counts II and III will be dismissed.

\* \* \* \* \*

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motion of defendants St. Louis County, Tom Lasater, Joe Percich, Patrick Hokamp and Chris Most to dismiss for failure to state a claim [Doc. #24] is **granted**. A separate order of partial dismissal will be entered.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 21st day of September, 2015.